**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**TRICIA CAMPO**, individually and on behalf of all others similarly situated,

Plaintiff,

v.

**THS GROUP, LLC**, d/b/a **TOTAL HOME PROTECTION**, a Pennsylvania limited liability company,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

1. Plaintiff Tricia Campo ("Campo" or "Plaintiff") brings this Class Action Complaint against Defendant THS Group, LLC d/b/a Total Home Protection ("THP" or "Defendant") to stop Defendant's practice of sending unsolicited text messages to cellular telephone users after the users request for such messages to "Stop"—even to users who've listed their phone numbers on the national Do Not Call Registry—and to obtain redress for all persons similarly injured by Defendant's conduct. Plaintiff also seeks an award of statutory damages payable to the members of the Classes plus court costs and reasonable attorneys' fees.

2. Plaintiff, for her complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

3. Plaintiff Tricia Campo is a natural person and a resident of Sterling, Loudoun County, Virginia.

4. Defendant THS Group, LLC d/b/a Total Home Protection is a limited liability company organized in and existing under the laws of the State of Pennsylvania, with its principal place of business located at 300 McGaw Drive, 2nd Floor, Edison, New Jersey 08837. Defendant conducts business throughout this District, the State of Virginia, and the United States.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*, a federal statute. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Classes consist of over 100 persons, there is minimal diversity, and the value claims of the class members, when aggregated, exceeds $5 million. Further, none of the exceptions to CAFA applies.

6. This Court has personal jurisdiction over THP because it conducts a significant amount of business in this District, made and continues to make unsolicited text message calls to persons, like Plaintiff, located within this District, and because the wrongful conduct giving rise to this Complaint occurred in and was directed to this District.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON FACTUAL ALLEGATIONS

8. Defendant THP is a home warranty company that offers service contracts to cover repair or replacement of household appliances. THP offers its service contracts to consumers across the United States, including Virginia. THP's website notes only California and Iowa as states in which its contracts are not available.[1]

9. Unfortunately for consumers, THP engages in unlawful telemarketing. In an attempt to promote its business and to generate leads for its service contracts, which it calls "home warranty plans," Defendant conducted (and continues to conduct) a widescale telemarketing campaign that repeatedly sends unsolicited text messages to consumers even after the consumers reply "STOP" in a clear revocation of consent to receive such messages.

10. Defendant also sends repeated unsolicited messages to consumers who have had their cellphone numbers listed on the national Do Not Call Registry ("DNC Registry") for at least thirty (30) days.

11. At all times material to this Complaint, Defendant was and remains fully aware that unsolicited telemarketing text messages are being made to consumers' cellular telephones through its own efforts and through the efforts of its agents/vendors. Defendant was also aware that messages were being sent after consumers had responded "STOP", including consumers with phone numbers listed on the DNC Registry.

12. Defendant's text messaging system, including without limitation its use of a short code, is an automatic telephone dialing system ("ATDS") in that it has the capacity to store and dial random numbers, *en masse*, without human intervention. The messages in this case were not transmitted individually—Defendant or its agents acting on its behalf caused the text messages to

---

[1] *See* https://totalhomeprotectionquote.com/.

be sent in an automated fashion to the Classes defined below. The messages were sent from a short code and were otherwise sent without human intervention.

13. The text message calls were for telemarketing purposes and offered or announced the availability of goods or services, specifically deals and discounts on Defendant's home warranty service contracts.

14. The text message calls were made by or on behalf of Defendant, with Defendant's knowledge and approval. Defendant has knowingly received the benefit of the text message calls and has ratified the making of such calls.

15. Defendant knowingly made, and continues to make, unsolicited telemarketing text messages without the consent of the recipients and knowingly continued to send messages after requests to "Stop." In doing so, Defendant not only invaded the personal privacy interests of Plaintiff and members of the putative Classes, it also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF TRICIA CAMPO**

16. Plaintiff Campo is the subscriber to and customary user of the personal cellular telephone number ending in 1788.

17. Plaintiff Campo registered her cellphone number on the National DNC Registry on or about March 28, 2008.

18. On July 6, 2020, at 11:01 a.m., Plaintiff received a text message on her cellphone from Defendant using SMS short code 945-52. The July 6, 2020 text message read: "THP SALE for July 4th! $100 OFF + 2 FREE MONTH +FREE ROOF COVERAGE ON ALL HOME WARRANTY PLANS. Call 844-537-6476. Reply STOP to end or Help for Help."

19. After the receipt of the July 6th text message, Plaintiff responded with "STOP". Plaintiff received an automated confirmation text message from 945-52 that read: "THP: You have successfully opted out. You will not receive messages from Total Home Protection. THP HELP for Help."

20. Later that same day, on July 6, 2020, at 4:30 p.m., and ignoring the fact Plaintiff had already revoked her consent and received confirmation of the revocation, Plaintiff received another unsolicited text message on her cellphone from Defendant using SMS short code 945-52. This text message, received after the opt-out confirmation, read: "THP SALE for July 4th! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE ON ALL HOME WARRANTY PLANS. Call 844-537-6476. Reply STOP to end of Help for Help." This is the exact same message that was received 4 hours prior.

21. On July 7, 2020, Defendant sent Plaintiff two additional unsolicited text messages from the short code 945-52. The first was sent at 1:04 p.m. and solicited Plaintiff to purchase a home warranty plan. The second text was sent at 6:01 p.m., which read: "THP July 4th PROMO! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE ON ALL HOME WARRANTY PLANS. Call 844-537-6476. Reply STOP to end or Help for Help."

22. Between July 8, 2020 and July 10, 2020, Defendant sent Plaintiff an additional six (6) unsolicited text messages from the short code 945-52. Each of the text messages continued to solicit Plaintiff to purchase Defendant's home warranty plans.

23. On July 13, 2020, at 11:01 a.m., Plaintiff received yet another unsolicited text message from Defendant's short code 945-52. The unsolicited text message read: "$100 OFF Home Warranty plans + 2 months free. THP has got you covered! Call 844-537-6476. All Annual Plans get FREE Roof Coverage. STOP to end. HELP for Help".

24. Plaintiff responded "Stop" to the July 13th text message. Like the prior STOP request, Defendant's system automatically responded: "THP: You have successfully opted out. You will not receive messages from Total Home Protection. THP HELP for Help".

25. Despite confirming Plaintiff's opt-out request, Defendant sent another text message later on July 13, 2020, at 4:48 p.m. The text message read: "THP has got you covered! $100 OFF Home Warranty plans + 2 months free. Call 844-537-6476. ALL Annual Plans get FREE Roof Coverage. STOP to end. HELP for Help".

26. On July 14th, 2020, Plaintiff received two additional unsolicited text messages from Defendant.

27. Screenshots of the text messages are reproduced below:




Text Message
Mon, Jul 6, 11:01 AM

THP SALE for July 4th! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE ON ALL HOME WARRANTY PLANS. Call 844-537-6476. Reply STOP to end or Help for Help.

Mon, Jul 6, 12:15 PM

STOP

THP: You have successfully opted out.
You will not receive messages from Total Home Protection.
THP HELP for Help

Mon, Jul 6, 4:30 PM

THP SALE for July 4th! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE ON ALL HOME WARRANTY PLANS. Call 844-537-6476. Reply STOP to end or Help for Help.

Tue, Jul 7, 1:04 PM

THP July 4th PROMO! $100 OFF + 2 FREE MONTH + FREE ROOF






Tue, Jul 7, 6:01 PM

THP July 4th PROMO! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE ON ALL HOME WARRANTY PLANS. Call 844-537-6476. Reply STOP to end or Help for Help.

Wed, Jul 8, 11:01 AM

Extended July 4th Sale! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE on all Home Warranty Plans. Call 844-537-6476. Reply STOP to end or Help for Help.

Wed, Jul 8, 4:46 PM

$100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE on all Home Warranty Plans. Extended July 4th Sale! Call 844-537-6476. Reply STOP to end or Help for Help.

Thu, Jul 9, 11:02 AM

Continuing our July 4th Sale! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE on all Home






Wed, Jul 8, 4:46 PM

$100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE on all Home Warranty Plans. Extended July 4th Sale! Call 844-537-6476. Reply STOP to end or Help for Help.

Thu, Jul 9, 11:02 AM

Continuing our July 4th Sale! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE on all Home Warranty Plans. Call 844-537-6476. Reply STOP to end or Help for Help.

Thu, Jul 9, 4:45 PM

$100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE on all Home Warranty Plans. Continuing our July 4th Sale! Call 844-537-6476. Reply STOP to end or Help for Help.

Fri, Jul 10, 11:01 AM

Last Day of our July 4th Sale! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE on all Home Warranty Plans. Call 844-537-6476. Reply STOP to end or Help for Help.






Fri, Jul 10, 11:01 AM

Last Day of our July 4th Sale! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE on all Home Warranty Plans. Call 844-537-6476. Reply STOP to end or Help for Help.

Fri, Jul 10, 4:45 PM

Don't miss July 4th Sale! $100 OFF + 2 FREE MONTH + FREE ROOF COVERAGE on all Home Warranty Plans. Call 844-537-6476. Reply STOP to end or Help for Help.

Mon, Jul 13, 11:01 AM

$100 OFF Home Warranty plans + 2 months free. THP has got you covered! Call 844-537-6476. ALL Annual Plans get FREE Roof Coverage. STOP to end. HELP for Help




THP: You have successfully opted out.
You will not receive messages from Total Home Protection.






THP: You have successfully opted out.
You will not receive messages from Total Home Protection.
THP HELP for Help

Mon, Jul 13, 4:48 PM

THP has got you covered! $100 OFF Home Warranty plans + 2 months free. Call 844-537-6476. ALL Annual Plans get FREE Roof Coverage. STOP to end. HELP for Help

Tue, Jul 14, 11:01 AM

Cover A/C, Plumbing, appliances & more! $100 OFF Home Warranty plans + 2 months free & free roof coverage. Call 844-537-6476. STOP to end. HELP for Help

Tue, Jul 14, 4:45 PM

$100 OFF Home Warranty plans + 2 months free & free roof coverage. Cover A/C, Plumbing, appliances & more! Call 844-537-6476. STOP to end. HELP for Help



28. By sending unauthorized telemarketing text message calls as alleged herein, especially after consumers like Plaintiff request that they "STOP," THP has caused consumers actual harm in the form of annoyance, nuisance, and invasions of their statutory and common law rights to privacy.

29. The text messages also interrupted, disturbed and interfered with Plaintiff's use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

30. In the present case, a consumer could be subjected to many unsolicited text messages, and continuous, repeated invasions of privacy, as THP simply ignores opt-out requests that it receives and continues to send messages after explicit requests that they "STOP."

31. Plaintiff and the DNC Registry Class members specifically listed their names on the DNC Registry to avoid these types of repeated harassing telemarketing messages.

32. To redress these injuries, Plaintiff, on behalf of herself and two Classes of similarly situated individuals defined below, brings this suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

33. On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized text-messaging activities and an award of statutory damages to the class members, together with costs, pre- and post-judgment interest, and reasonable attorneys' fees.

## CLASS ALLEGATIONS

34. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following two Classes:

> **Stop Call Class**: All persons in the United States from four years prior to the filing of the initial complaint in this action to the present who: (1) having never executed a home service contract with Defendant; (2) Defendant, or a third person

acting on behalf of Defendant, sent messages from Defendant's short code; (3) to the person's cellular telephone number; (4) for the same reason Defendant caused text messages to be sent to Plaintiff Campo; (5) after the person replied "STOP" or with a substantially similar command.

**DNC Registry Class**: All persons in the United States from four years prior to the filing of the initial complaint in this action to the present who: (1) having never executed a home service contract with Defendant; (2) Defendant, or a third person acting on behalf of Defendant, sent at least two text messages within any 12-month period after the person replied "STOP" or with a substantially similar command; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the same purpose as text messages were sent to Campo; (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call Campo.

35. The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) the legal representatives, successors, and assignees of any such excluded persons; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendant's counsel.

36. Plaintiff anticipates the need to amend the class definitions following appropriate discovery regarding the scope of the Classes.

37. **Numerosity:** The exact number of members in each of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent automated text messages to thousands of consumers who fall into the definition of each Class. Members of the Classes can be identified through reference to Defendant's records.

38. **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant systematically failed to honor STOP or similar requests and whether STOP requests sufficiently revoke consent;

(c) Whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Stop Class;

(d) Whether, for the members of the DNC Registry Class, Defendant systemically sent multiple text messages during any 12-month period to cellphone numbers listed on the National Do Not Call registry, and

(e) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

39. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

40. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Neither Plaintiff nor her counsel has interests adverse, antagonistic to, or in conflict with those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting her action on behalf of the members of the Classes and have the financial resources to do so.

41. **Conduct Similar Towards All Class Members:** This case is also appropriate for class certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of each Class and making final class-wide injunctive relief appropriate.

42. **Superiority & Manageability:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be much more difficult for the individual Class members to obtain effective relief from Defendant's misconduct.

43. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiff and the Stop Call Class)**

44. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

45. Defendant THP and/or its agents transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Stop Call Class using equipment that, upon information and belief, had the capacity to store or produce telephone

numbers to be called using a random or sequential number generator and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

46. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, stored and dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. A short code was used to transmit the messages.

47. These text messages were stored and sent *en masse* and without the consent of the Plaintiff and other members of the Stop Call Class to receive such text message marketing spam.

48. Plaintiff never purchased a home service contract, home warranty, or any other product from Defendant.

49. Any prior express consent Plaintiff or any other class member may have provided was expressly revoked by Plaintiff and the Stop Call Class members when they responded STOP. By responding with the common SMS codes to opt-out of further communications, such as "STOP," "REMOVE," "OPT OUT," "END," "CANCEL," etc., each class member communicated his or her unambiguous intent to revoke any such consent.

50. Prior express consent under the TCPA may be revoked.

51. Plaintiff and the Stop Call Class members expressly requested that Defendant THP no longer send text messages to them, after which Defendant failed to honor the requests and failed to place Plaintiff and members of the Class on Defendant's internal do-not-call list.

52. The text messages to Plaintiff and the Stop Call Class were made after any consent had been expressly revoked by responding with an opt-out request, such as "STOP."

53. A STOP message is a clear revocation of any prior consent that may have been provided by any class member. No prior express consent allowed Defendant to continue text

messaging after the consumers said STOP. In fact, Defendant's text messages expressly informed consumers that they could end the transmission of such messages by responding "STOP."

54. Indeed, Defendant acknowledged the STOP request and indicated no further messages would be sent. Despite this, Defendant continued to send text messages.

55. Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

56. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Stop Call Class are each entitled to, under Section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of the TCPA.

57. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Call Class.

58. Plaintiff and the Stop Call Class members are also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

**SECOND CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiff and the DNC Registry Class)**

59. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

60. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy and their right to avoid receiving telephone solicitation to which they object.

61. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

62. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*.'" The Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[2]

63. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

---

[2] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

64. Defendant violated 47 C.F.R. § 64.1200(d) by failing to maintain a written policy for maintaining a do not call list, by failing to train its personnel involved in telemarketing regarding the existence and use of any such policy or do not call list, by failing to accurately record do not call requests internally, and by failing to honor do not call requests.

65. Here, Defendant sent Plaintiff at least thirteen (13) unsolicited text messages after she submitted a valid "STOP" request. Worse yet, Defendant's own system recognized and confirmed at least two of the "STOP" requests.

66. After confirming Plaintiff's and the DNC Registry Class members' opt-outs, Defendant continued to send text messages to solicit them to purchase its home warranties.

67. Defendant made multiple unsolicited calls during a 12-month period to Plaintiff and the members of the DNC Registry class despite the fact that Plaintiff and the DNC Registry class members had had their phone numbers listed on the DNC Registry for at least thirty (30) days.

68. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Stop Call Class are each entitled to, under 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

69. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Tricia Campo, on behalf of herself and the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff Campo as the representative of the Classes and appointing her counsel as Class Counsel;

B. An award of actual monetary loss from such violations or statutory damages in the amount of five hundred dollars ($500.00) for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C. An order declaring that Defendant's text messages, as set out above, violate the TCPA;

D. A declaratory judgment that Defendant's telephone texting equipment constitutes an ATDS under the TCPA;

E. A declaratory judgment that Defendant's failure to STOP texting persons whose phone numbers are on the National Do Not Call registry more than thirty (30) days after the person submitted a STOP request violates the TCPA;

F. An injunction requiring Defendant to honor STOP requests and similar requests and otherwise protecting the interests of the Class;

G. An award of pre- and post-judgment interest;

H. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

I. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: August 14, 2020

**TRICIA CAMPO**, individually and on behalf of all others similarly situated,

By: /s/
One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210

Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Class