IN THE UNTED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **TRICIA CAMPO,** individually and on behalf of all similarly situated individuals**,** | ) ) ) | Case No. 1:20-cv-00925-AJT-IDD |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| **THS GROUP, LLC,** d/b/a **TOTAL HOME PROTECTION**, an Illinois insurance company, | ) ) ) ) | |
| **Defendant.** | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY

**I.     INTRODUCTION**

This case challenges Defendant THS Group, LLC d/b/a Total Home Protection's ("Defendant" or "THP") serial violations of the Telephone Consumer Protection Act ("TCPA"). Specifically, THP sends unsolicited, autodialed telemarketing text messages to consumer cell phones despite consumers like Plaintiff Tricia Campo ("Plaintiff" or "Campo") expressly opting out of such communications with a clear "STOP" request. Defendant further sends such messages to consumers who have registered their phone numbers on the National Do Not Call Registry. Rather than answer the allegations in the Complaint, Defendant asks the Court to dismiss Plaintiffs' case or, in the alternative, to stay the entire case pending the Supreme Court's ruling in *Facebook Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020), a case concerning the definition of an automated telephone dialing system ("ATDS"). Defendant's dismissal arguments fail, and a stay pending resolution of the *Duguid* case is not appropriate or supported. As explained further below, the Court should deny THP's motion in its entirety.

THP's primary argument for dismissal is based on its erroneous belief that, because the Supreme Court in *AAPC* found the TCPA's government-debt exception to be unconstitutional, the entire autodialer ban was rendered unconstitutional, and no telemarketers can be held liable for violating the TCPA from the date the exception was enacted in 2015 until July 6, 2020. Leaving aside the fact that the majority of the messages at issue were sent to Plaintiff *after* the government-debt exception was severed, Defendant's argument can only be made by ignoring the Supreme Court's analysis of severability within the *AAPC* decision itself. A majority of the Supreme Court concurred that the government-debt exception—an unconstitutional amendment made decades after the TCPA was enacted—did not otherwise invalidate the TCPA's broader prohibition on robocalls. THP's conduct has been plainly proscribed for almost thirty years, and Defendant's push for the Court to follow *Creasy* is in fact a push for the Court to adopt the reasoning of the dissent over the portion of the *AAPC* opinion agreed to by seven Justices.

THP also briefly contends that Plaintiff has no valid claim, inexplicably asserting that Campo did not opt out of messages or allege that she did so. But even a cursory review of the Complaint reveals that she opted out several times and continued to receive messages. Plaintiff has stated a claim for relief.

Defendant's alternative motion to stay is similarly meritless. THP's assessment of the *Duguid* case is flawed because, regardless of the definition of ATDS that the Supreme Court may ultimately settle on, Plaintiff's ATDS allegations meet even a strict interpretation of the statutory definition, such that a reversal of *Duguid* would not dispose of even one of her claims. Defendant made no attempt to analyze the appropriate *Landis* factors, but they do not weigh in favor THP's request to postpone inevitable discovery. Accordingly, the Court should deny Defendant's Motion to Dismiss in its entirety.

## II.  SUMMARY OF THE CLAIMS

Plaintiff alleges that THP violated the TCPA by sending unsolicited text messages to her cellphone, and to the cellphones of two class of consumers, despite Plaintiff's registration on the National Do Not Call registry and her requests that the texts "STOP." (*See* Compl., dkt. 1 at ¶ 1.)

Plaintiff first received a text from Defendant on July 6, 2020 from short code 945-52. (*Id.* ¶ 18.) In response, she replied with "STOP," and her request was met with a confirmation message informing Campo that she had "successfully opted out" and "will not receive messages from Total Home Protection." (*Id.* ¶ 19.) Despite her request and the confirmation message, Plaintiff received another marketing message several hours later on July 6, 2020. (*Id.* ¶ 20.) Between July 7, 2020 and July 10, 2020, Plaintiff received eight more text messages from short code 945-52, all of which continued to solicit Campo to purchase THP's home warranty plans. (*Id.* ¶¶ 21–22.) Campo received another message on July 13, 2020, to which she again replied "STOP" and received another message confirming that she had "successfully opted out." (*Id.* ¶¶ 23–24.) Nevertheless, Plaintiff received another marketing message on July 13, 2020, and two more messages on July 14, 2020. (*Id.* ¶¶ 25–26.) Plaintiff thereafter filed the present action seeking redress for her harms and the harms of two classes of similarly situated individuals—a "Stop Call Class" of consumers who continued to receive text messages after replying with "STOP" or a similar command, and a "DNC Registry Class" of consumers who received such messages despite the registration of their phone numbers on the National Do Not Call Registry for at least thirty days. (*Id.* ¶ 34.)

In Defendant's statement of Material Facts, THP brazenly suggests that Plaintiff's counsel has acted in "bad faith" by bringing this action, in light of a prior settlement agreement with THP in which Plaintiff's counsel represented that they had no knowledge of other

3

individuals with similar claims. (Memo. In Supp. of Mot. to Dismiss, dkt. 15 at 3.) Leaving aside the fact that THP has likely violated the confidentiality of such prior agreement by including its terms in a public filing, Defendant's argument is easily, objectively refutable. THP claims that Campo's complaint is "based on calls that that [sic] occurred prior to the agreement being signed." (*Id.*) This is patently false—by Defendant's own admission, the prior settlement agreement was executed on July 2, 2020, and the first text message alleged by Campo was received on four days later on July 6, 2020. (*Compare id.*, *with* Dkt. 1 at ¶ 18.) Plaintiff did not even have a claim at the time the agreement was executed. Rather, her claim arose days later when THP engaged in additional unlawful telemarketing. Further still, Plaintiff did not reach out to counsel until July 8, 2020, and counsel became aware of her potential claim on July 28, 2020. *See* Declaration of Patrick H. Peluso ("Peluso Decl."), attached hereto as Exhibit A, at ¶¶ 3–4. These facts are not "dubious" and do not suggest bad faith—on the contrary, they suggest that THP's failure to comply with the TCPA continued even after a prior settlement agreement, causing harm to Campo and other similarly situated consumers.

### III.   ARGUMENT

#### A.   Defendant's Motion To Dismiss Mischaracterizes The Supreme Court's *AAPC* Decision.

In its first argument for dismissal, Defendant contends that the Supreme Court's ruling in *AAPC* supposedly rendered the TCPA's entire autodialer ban unconstitutional, and thus the Court supposedly lacks subject matter jurisdiction over Plaintiff's claims. (Dkt. 15 at 4–5.) Of course, telemarketers like THP would appreciate being relieved of all liability for unlawful texts and calls made over the last five years. However, this argument cannot be supported without ignoring the Supreme Court's *AAPC* decision and reasoning. That is, Justice Kavanaugh, in a portion of the opinion joined by six other Justices, pointedly determined that the offending

4

exemption was severable from the TCPA's autodialer ban. The government-debt exception—not the autodialer ban itself—was found to be unconstitutional, and the 2015 amendment that added this exemption was effectively void when enacted. In other words, the severing of the government-debt exception as unconstitutional has no effect on the validity of the rest of the statute as it has stood since 1991. Defendant's plea for the Court to adopt the reasoning in *Creasy* amounts to a request that the Court ignore the reasoning endorsed by seven Supreme Court Justices in favor of the two-Justice dissent that would "disrespect the democratic process." THP's motion to dismiss for lack of subject matter jurisdiction is without merit.

On July 6, 2020—the same day that Campo received her first text message from THP[1]—the Supreme Court issued its opinion in *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) [hereafter "*AAPC*"]. The case involved a constitutional challenge to the TCPA's government-debt exemption, which was enacted in 2015 to permit the unsolicited, autodialed calls to cell phones when attempting to collect on a government-backed debt. *Id.* at 2344–45. Justice Kavanaugh authored the judgment of the Court. *Id.* at 2343. On the issue of constitutionality, six Justices agreed that the exception was a content-based rule that "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.* With regard to the appropriate remedy—specifically, whether to invalidate the entire robocall restriction as enacted in 1991 or to sever and invalidate only the government-debt exemption added by amendment in 2015—seven Justices agreed that the traditional remedy of severance was appropriate. *Id.* at 2343. Justice Kavanaugh outlined the

---

[1] Because Defendant's alleged TCPA violations with respect to Campo occurred *after* the government-debt exception was severed from the Act, THP cannot credibly suggest that her individual claims for relief are "based on an unconstitutional statute." (*See* Dkt. 15 at 5.) Nevertheless, because she seeks relief on behalf of similarly situated class members who suffered harm over the last four years, she will address Defendant's argument.

5

Supreme Court's "strong presumption of severability" that has been "firmly established since *Marbury v. Madison*," such that one unconstitutional section of a statute may be invalidated while the remaining statute may be given full effect. *Id.* at 2350–51.

As to the effect of the amendment on enforceability of the remaining statute, Justice Kavanaugh pointed out that "the remainder of the law is capable of functioning independently and thus would be fully operative"—indeed, it was fully operative for more than twenty years before the government-debt exemption was added. *Id.* at 2353. Notwithstanding an unconstitutional amendment, the remainder of the TCPA is enforceable:

> The Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law. In those cases, the Court has treated the original, pre-amendment statute as the "valid expression of the legislative intent." *Frost v. Corporation Comm'n of Okla.*, 278 U.S. 515, 526–527, 49 S.Ct. 235, 73 L.Ed. 483 (1929). The Court has severed the "exception introduced by amendment," so that "the original law stands without the amendatory exception." *Truax v. Corrigan*, 257 U.S. 312, 342, 42 S.Ct. 124, 66 L.Ed. 254 (1921).
>
> . . .
>
> Echoing *Marbury*, the Court in *Frost* explained that **an unconstitutional statutory amendment "is a nullity" and "void" when enacted, and for that reason has no effect on the original statute**. 278 U.S., at 526–527, 49 S.Ct. 235.

*Id.* (emphasis added). Consequently, Justice Kavanaugh reasoned that, while no one should be held liable for making government-debt calls during the five-year period of the exemption's effect, the Supreme Court's decision "does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355, n. 12.

Despite the Supreme Court's analysis, Defendant asks the Court to apply the logic

6

employed in *Creasy v. Charter Comm's, Inc.*, No. 20-1199 (E.D. La. Sept. 28, 2020). (Dkt. 15-2.) In *Creasy*, the Eastern District of Louisiana reasoned that the Justice Kavanaugh's footnote regarding the liability of robocallers was "nonbinding dicta," despite the fact that it modified the portion of the plurality opinion agreed to by seven Justices. (*Id.* at 3.) The *Creasy* court also found that the Supreme Court said "precious little" about the effect of severance of the unconstitutional amendment on the remaining statute. (*Id.*) However, *Creasy* completely overlooked the above analysis regarding *Marbury* and *Frost*—particularly the treatment of an unconstitutional amendment as "a nullity" and "void" when enacted, such that it has no effect on the original statute. *AAPC*, 140 S. Ct. at 2353. Justice Kavanaugh did analyze the effect of severance on the enforceability of the TCPA's robocall restriction, and his analysis drew the support and concurrence of six other Justices, but *Creasy* viewed the Court's "fractured decision" as an opportunity to mine the dissent for logic that would support its preferred result. (Dkt. 15-2 at 2.) Despite the majority support for severability of the offending exemption, *Creasy* concluded that the dissent of two Justices was "the better argument as a matter of law and logic." (*Id.* at 4.) This is decidedly not how courts are instructed to apply plurality opinions.

      Though easier stated than applied, the *Marks* rule instructs that the holding of the Court "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). As *Creasy* does point out, six members of the Court concluded that the exemption was unconstitutional, and seven members concluded that the exemption could be severed and "the entire 1991 robocall restriction should not be invalidated." (Dkt. 15-2 at 9) (citing *AAPC*, 140 S. Ct. at 2343). But *Creasy* turns instead to the dissent, ignoring the portion of the holding agreed to by *seven* Justices—that the amendment was void when enacted and had no effect on the remaining statute—in favor of the two-member dissent's approach, which would excuse all callers from liability over the last five years. (Dkt. 15-2 at 4.) This remedial approach encouraged by Justice Gorsuch was roundly rejected by Justice Kavanaugh:

      Justice Gorsuch's approach to this case would not solve the problem of harming

7

> strangers to this suit; it would just create a different and much bigger problem. His proposed remedy of injunctive relief, plus *stare decisis*, would in effect allow all robocalls to cell phones—notwithstanding Congress's decisive choice to prohibit most robocalls to cell phones. That is not a judicially modest approach but is more of a wolf in sheep's clothing. That approach would disrespect the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted. Justice Gorsuch's remedy would end up harming a different and far larger set of strangers to this suit—the tens of millions of consumers who would be bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls.

*Id.* at 2356.

In urging the Court to adopt *Creasy*, THP is seeking the same blanket immunity that a seven-member majority of the Supreme Court refused to extend to AAPC. This Court should likewise refuse to grant it to Defendant. While the government-debt exception was unconstitutional, it was severable from the TCPA and had no effect on the constitutionality of the remaining autodialer ban. The conduct alleged by Plaintiff in her Complaint was unlawful in 1991, it was unlawful after the amendment in 2015, and it was unlawful when THP sent the texts after the unconstitutional exemption was severed. Defendant's motion to dismiss pursuant to Rule 12(b)(1) should be denied.

> **B.     Plaintiff Has Stated A Claim For Relief With Regard To Her "STOP" Requests.**

Defendant's second argument for dismissal, and apparently its only basis for invoking Rule 12(b)(6), is its contention that Plaintiff "has no valid claims." (Dkt. 15 at 5.) In support, THP bizarrely claims that "at no time, did Plaintiff opt out" of messages, and that she supposedly failed to allege as much in her Complaint. (*Id.*) This argument can be easily debunked by reading the Complaint.

Campo alleged in great detail that she made multiple "STOP" requests in response to Defendant's telemarketing messages—once on July 6, 2020, and again on July 13, 2020. (Dkt. 1 at ¶¶ 19, 24.) She also produced screenshots in her complaint that verify both of her stop requests as well as a message on July 7, 2020, informing THP that she had asked for the messages to stop several times and intended to report Defendant's behavior. (*Id.* ¶ 27.) Further still, the screenshots demonstrate that THP received and even *acknowledged* Campo's "STOP" requests, replying to each with a confirmation that she had "successfully opted out" and would "not receive messages from Total Home Protection." (*Id.*) In light of these clear allegations, THP's claim that Campo did not opt out or even allege that she opted out is preposterous.

Defendant also briefly suggests that Plaintiff suffered no injury because "Plaintiff brought on the messages herself and opted in to them." (Dkt. 15 at 5.) As an exhibit, THP included two blurry entries from a database that list some of Campo's personal information. (Dkt. 15-1.) Even if the Court were to assume that THP's paltry exhibit is enough to demonstrate that Plaintiff opted into messages on May 9, 2020 (it should not), she responded to the onslaught of text messages from THP with clear "STOP" requests, only one of which would have been enough to revoke any prior consent that Defendant contends may have existed. Indeed, Plaintiff's first cause of action is premised on THP's failure to honor her "STOP" requests and its subsequent bombardment of her cell phone with additional messages. (*See* Dkt. 1 at ¶¶ 28, 49–55.)

Defendant's argument for dismissal pursuant to Rule 12(b)(6) falls woefully short. It is unclear whether THP is ignoring the allegations in the Complaint or simply asking the Court to do so. In either case, dismissal is inappropriate. Plaintiff alleged that she made multiple "STOP" requests in response to the unsolicited telemarketing messages sent by THP, and she has

9

provided evidence to support her allegations. Defendant's motion to dismiss should be denied.

### C. THP's Alternative Request To Stay Is Inappropriate Because A Ruling In *Duguid* Could Not Dispose Of Even One Of Plaintiff's Claims.

As an alternative to dismissal, THP asks in one paragraph that the Court stay the entire case pending the Supreme Court's review of *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). (Dkt. 15 at 6.) While the Supreme Court's ruling could potentially alter the definition of an ATDS, it will not affect the foundation of Plaintiff's claims—Campo's causes of actions are based on THP's failure to honor stop requests and failure to honor the National DNC Registry. To the extent Plaintiff must prove the use of an ATDS, she intends to do so regardless of the *Duguid* decision, and her autodialer allegations align with even a strict interpretation of the statute. Further THP has not met its burden, and has in fact made little attempt whatsoever, to suggest hardship in proceeding or that the relevant factors favor its request to stay. THP's alternative request should be rejected, and the Court should permit this matter to proceed to discovery.

As THP suggests, the Supreme Court in *Duguid* will consider the statutory ATDS definition—in particular, whether a dialer that does not use a "random or sequential number generator" may be considered an ATDS. While a decision in either direction will certainly impact TCPA litigation and the legal definition of an autodialer, it will not materially affect or otherwise resolve either of Plaintiff's claims. Campo alleged that Defendant's dialer had the capacity to use "a random or sequential number generator." (Dkt. 1 at ¶ 45.) Thus, even if the Court reverses *Duguid*, Plaintiff's claims will be unaffected, as she has pleaded the use of an ATDS. Further, the thrust of her claims is that: (1) Defendant continued to text consumers despite clear "STOP" requests; and (2) Defendant continued to text consumers on the National DNC Registry. (*See* Dkt. 1 at ¶¶ 1, 34.) To the extent Plaintiff may need to prove the nature of

10

Defendant's dialing system, such proof is, at most, incidental to just one of her claims.

Nevertheless, THP claims that the resolution of the *Duguid* matter "promises to significantly hone the issues in this case." (Dkt. 15 at 6.) Even if this were true (it is not), it would not justify the requested stay. Defendant briefly cites to the Supreme Court's acknowledgement in *Landis* that courts have inherent power to control their own dockets, including the power to stay. (*Id.*); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). But THP fails to note that such a stay requires a "clear case of hardship or inequity in being required to go forward." *PBM Nutritionals, LLC v. Dornoch Ltd.*, 667 F. Supp. 2d 621, 631 (E.D. Va. 2009) (quoting *Landis*, 299 U.S. at 255). A party seeking a stay "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *PBM*, 667 F. Supp. 2d at 631 (quoting *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 127 (4th Cir.1983)). THP has not suggested any hardship at all, merely asking for a stay on the belief that issues will supposedly be honed. On the other hand, Plaintiff will be prejudiced if the case is stayed because she would be unable to even discover evidence material to her claims for many months, during which time THP would be free to continue its unlawful practices and cause more harm. Because Defendant has failed to show any hardship or inequity in proceeding, a stay is not warranted. *PBM*, 667 F. Supp. 2d at 631.

Put simply, THP has provided no support for staying this matter postponing all proceedings until the Supreme Court issues its ruling in *Duguid*. This is not one of the "rare" instances where a party should be made to stand aside while a pertinent rule of law is decided. *Landis*, 299 U.S at 255. Delaying the entire case as requested would unduly prejudice Plaintiff in her ability to support her claims, and THP will suffer no hardship in proceeding. Defendant's alternative motion should be denied.

### IV. CONCLUSION

THP's motion should be denied in its entirety. The TCPA's autodialer ban was not rendered unconstitutional in its entirety by the 2015 amendment, and Defendant's push for the Court to adopt *Creasy* is inappropriate and contrary to the holding joined by the majority of Supreme Court Justices in *AAPC*. With regard to THP's brief Rule 12(b)(6) motion, Plaintiff has plainly alleged violations of the TCPA and Defendant's failure to honor "STOP" requests. Finally, Defendant's alternative request to stay the case is without support, as the Supreme Court's upcoming review of the ATDS definition in *Duguid* will not resolve or dispose of Plaintiff's claims and THP has failed to demonstrate any hardship that it would face in proceeding with the case. Accordingly, the Court should deny the motion in its entirety, permit the parties to proceed, and award any such relief as it deems necessary and just.

    Respectfully Submitted,

    **TRICIA CAMPO**, individually and on behalf of all others similarly situated,

Dated: November 23, 2020    By: ___/s/ Francis J. Driscoll, Jr.___
        Counsel for Plaintiff

Francis J. Driscoll, Jr.
frank@driscolllawoffice.com
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809
*Attorneys for Plaintiffs and the Class*

    * *Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on November 23, 2020.

                                                             */s/*    *Francis J. Driscoll, Jr.*